IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRAYON LEVAL WILLIAMS,

        Plaintiff,

v.                                                                                  Case No. 22-3008-JWB

BROOKE HAUBENSTEIN, et al,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion for summary judgment. (Doc. 88.) The motion has been fully briefed and is ripe for decision. (Docs. 88-91, 95-97.) The motion is GRANTED because Plaintiff fails to establish a question of fact under the deliberate indifference standard.

**I.  Facts**

The following facts are either uncontroverted or viewed in a light most favorable to Plaintiff. Additional facts may be included in the analysis for clarity. Plaintiff Trayon Williams proceeds pro se and alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. (*See* Doc. 6.) Specifically, Plaintiff alleges he suffered from one or more anal fistulas while incarcerated at the Butler County Detention Center in 2021. (Doc. 91 ¶ 11.) Defendant Brooke Haubenstein is a Registered Nurse who worked at the Butler County Detention Center in 2021. (*Id.* ¶ 7.) Defendant Lou Miller is a Nurse Practitioner who is employed by the jail contractor and sees inmate patients at the Butler County Detention Center once a week. (*Id.* ¶ 8.)

1

Plaintiff reported draining from his buttock to Haubenstein on January 16, 2021. (*Id.* ¶ 27.)[1] Plaintiff's buttocks and boxers were examined. (*Id.* ¶ 28) Plaintiff had two openings with some serosanguinous discharge on the lower right buttock. (*Id.*; *see also* Doc. 91-8 at 14.) Miller ordered thirty days of antibiotics and Tylenol for Plaintiff that same day. (Doc. 91 ¶ 30). Miller also ordered a gastroenterology consult with Dr. Zayat for perianal Crohn's disease and an endoscopy and biopsy based on Plaintiff's pre-incarceration medical records. (*Id.* ¶ 31.) Medical rounds were conducted on Plaintiff on January 17, 18, 19, 20, and 21 and Plaintiff made no further complaints. (*Id.* ¶ 32).[2] Plaintiff refused to have his vital signs taken on January 18. (*Id.* ¶ 34.)

Miller examined Plaintiff on January 21. (*Id.* ¶ 37.) Plaintiff's subjective complaint was that he had an abscess on his right gluteal fold "which was draining but has since stopped." (Doc. 91-8 at 15.) Plaintiff's vital signs were stable and within a normal range. (Doc. 91 ¶ 37.) Miller did not note any drainage. (*Id.*) Miller assessed Plaintiff as having a "bilateral gluteal abscess, healing from an incision and drainage procedure on the right lower gluteal fold area with a 2 mm scabbed area, and [that] all other areas were well-healed with a 1.5 cm old scarring and no drainage." (*Id.* ¶ 38.) There was also a large condyloma cauliflower encircling the anus. (*Id.*) Miller ordered a 14-day prescription to an antibiotic called Ciprofloxacin for Plaintiff and continued his current antibiotics for 14 days. (*Id.* ¶ 39.) Miller explained her treatment plan to Plaintiff and told him to follow-up as needed. (*Id.*) Plaintiff was seen on medical rounds in segregation on January 22, 24, 25, 26, and 27. (*Id.* ¶ 40.) Plaintiff had no complaints. (*Id.*)[3]

---

[1] Plaintiff attempts to dispute this fact by adding that he also reported pain and a request to be seen by someone who could provide medical care. (Doc. 95 at 1.) Plaintiff repeatedly "disputes" facts to add that he also complained of pain. These subjective complaints, if anything, only supplement the record and do not contravene the objective facts in the record.

[2] Plaintiff attempts to dispute this fact by arguing that there was no need for further complaints because he knew he had an appointment with Miller coming on January 21. (Doc. 95 at 2.) This characterization does not alter the fact that Plaintiff made no additional complaints to medical personnel during the stated period.

[3] Plaintiff "disputes" this fact by arguing he did not complain because he was told he would be seen again soon. (Doc. 95 at 3.) This does not controvert the fact.

Plaintiff refused his medications on January 23. (*Id.* ¶ 41.) He refused his morning medications and temperature on January 24. (*Id.*) Plaintiff refused his antibiotics on January 25 and refused all medications on January 26. (*Id.*) Plaintiff was moved from observation to general population on January 27. (*Id.*) On January 28, Plaintiff again refused his prescriptions. (*Id.*)[4] Plaintiff was scheduled for an appointment on January 29 with Dr. Zayat from Kansas Gastroenterology, but Dr. Zayat wanted a surgeon to evaluate Plaintiff's abscesses first. (*Id.* ¶ 42.) Haubenstein was told on February 1 that Dr. Zayat wanted Plaintiff to have a surgery consult. (*Id.* ¶ 42.) Haubenstein requested approval for a general surgery consult from the U.S. Marshals Service, which was granted. (*Id.* ¶ 43.) Plaintiff refused his Tylenol prescription and one of his antibiotic prescriptions on February 6 and 7.[5] (*Id.* ¶ 44.) There were two attempts to get Plaintiff to outside specialists, but the outside providers canceled those appointments. (*Id.* ¶ 45.)

Plaintiff saw a general surgeon, Dr. McKesey, on February 16. (*Id.* ¶ 47). Dr. McKesey documented that Plaintiff had a recurrent buttock abscess that was likely related to fistulas from Crohn's disease. (*Id.*) Plaintiff's pain had improved. (*Id.*) Dr. McKesey assessed Plaintiff with anorectal fistula and Crohn's disease. (*Id.* ¶ 49). The doctor noted that no abscess needed draining at that time. (*Id.*) He said that Plaintiff needed to avoid surgery for the fistulas because they would not heal. (*Id.*) He also noted that Plaintiff could need surgical intervention for his Crohn's disease in the future, but that the complications from surgery would be significant. (Doc. 91-11 at 2.)

Plaintiff requested a sick call on March 31, which Haubenstein saw and responded to on April 3. (Doc. 91 ¶ 51). Plaintiff's vital signs were within normal limits. (*Id.* ¶ 52). Plaintiff told

---

[4] Plaintiff argues that he did not take his medications because Defendants told him not to take medication that made him feel sick. (Doc. 95 at 3; Doc. 95-2 ¶ 28.) Thus, Plaintiff does not materially dispute that he refused medication. He merely argues that he did so for a good reason. But tellingly, Plaintiff does not point to any evidence in the record that he ever informed Defendants that the prescribed medication made him feel sick or that he refused it based on their directions.

[5] Plaintiff "disputes" his refusal of medications in February for the same reason he disputes his refusal of medications in January. (Doc. 95 at 3-4.) His characterization of his refusal still does not materially dispute the fact.

3

Haubenstein that he was leaking from sores on his rectal area. (*Id.*). Plaintiff also reported clear discharge from the sores around his rectum but said that they had not leaked for a couple months. (*Id.*).[6] Haubenstein contacted Miller, and Miller saw Plaintiff during her next site visit on April 8. (*Id.* ¶¶ 53-54). Miller examined and assessed Plaintiff. (*Id.* ¶ 55.) Plaintiff's vital signs were normal. (*Id.*) Two areas on Plaintiff's right medial buttock were "5 mm with pink appearance" and one area was "1 cm dry, normal skin eschar." (*Id.*) "All three areas, with palpation, were firm feeling under the skin." (*Id.*) "Miller told Plaintiff to keep the areas clean and dry and report drainage to the nurses." (*Id.* ¶ 56.)[7] Miller ordered A&D ointment (a skin protectant) twice a day for seven days. (*Id.*) Plaintiff already had a scheduled appointment with gastroenterologist Dr. Ransom Kilgore. (*Id.*)

Plaintiff saw Dr. Kilgore on April 22. (*Id.* ¶ 57.) Dr. Kilgore diagnosed Plaintiff with Crohn's disease. Dr. Kilgore "ordered labs" and "a CT of the abdomen and pelvis." (*Id.* ¶ 60.) Dr. Kilgore knew that Plaintiff was incarcerated at Butler County Detention Center. (*Id.* ¶ 61.) Dr. Kilgore did not, however, send Plaintiff to the hospital for any treatment or conclude that there was an emergency. (*Id.*) The U.S. Marshals Service approved the CT on April 29, and Plaintiff was sent out for the CT on April 30. (*Id.* ¶¶ 62-63.) The CT found "no ascites or abnormal fluid collection present, and no evidence of a fistula." (*Id.* ¶ 63.)

Plaintiff requested an A&D ointment refill on May 13, which was given to him the next day. (*Id.* ¶ 64.) Plaintiff saw Dr. Kilgore on June 8 for a follow-up. (*Id.* ¶ 65.) Plaintiff told Dr. Kilgore "that he was doing well, and he denied abdominal pain, nausea or vomiting. He reported

---

[6]  Plaintiff further alleges that he also complained about pain and inflammation. (Doc. 95 at 4.) Plaintiff also does not recall making some of his statements to Haubenstein, but he does not dispute that he made the statements.
[7]  Plaintiff "disputes" this fact by arguing Defendants told him to keep his wounds clean using the sink in his cell when he could not use the shower. (Doc. 95 at 4.) Plaintiff's response represents a conflict over the mode of keeping his afflicted areas clean and does not controvert that he was told to keep the designated areas clean and dry.

shortness of breath and dizziness . . . . [and] said he was watching what he ate for symptom management." (*Id.*) "Dr. Kilgore told Plaintiff that the CT of the abdomen showed there [was] some mild circumferential thickening near the rectosigmoid junction with slight stranding of the fat, but no ascites or abnormal fluid collections were present." (*Id.* ¶ 66.) Dr. Kilgore also informed Plaintiff there was no evidence from the CT of a fistula. (*Id.*) Dr. Kilgore recommended a colonoscopy, but he found Plaintiff stable with regards to cardiology. (*Id.* ¶ 67.) Dr. Kilgore did not find an emergency, nor did he send Plaintiff to the hospital. (*Id.* ¶ 68.)

Plaintiff requested a sick call on June 27. (*Id.* ¶ 69.) Haubenstein saw Plaintiff the same day. (*Id.*) Plaintiff complained of rectal pain. (*Id.*) Plaintiff's vitals were normal. (*Id.* ¶ 70.) Haubenstein did not visually assess Plaintiff but educated him regarding Crohn's disease and hemorrhoids. (*Id.*) Haubenstein contacted Miller that day, and Miller ordered Tucks pads to help with Plaintiff's pain. (*Id.* ¶ 71). Plaintiff was told to follow-up as needed. (*Id.*)

Plaintiff got his colonoscopy on August 5. (*Id.* ¶ 72.) "Dr. Kilgore found a hypertrophied anal papilla present in plaintiff's anus. There were no significant histopathologic abnormalities. Plaintiff had focal mildly active chronic proctitis and non-necrotizing granuloma which was consistent with inflammatory bowel disease." (*Id.* ¶ 73.) Again, at no point did Dr. Kilgore say that there was an emergency or send Plaintiff to the hospital for treatment. (*Id.* ¶ 74.) Plaintiff denied discomfort when he returned to the detention center. (*Id.* ¶ 75.) Miller saw Plaintiff on August 12 and went over his colonoscopy results with him. (*Id.* ¶ 76.) "Miller ordered Plaintiff to follow-up with a surgical consult for fistulous disease. She also ordered A&D ointment to the affected area for 120 day[s] and for [P]laintiff to follow-up as needed." (*Id.* ¶ 77.)

Plaintiff saw Dr. Kilgore again on September 7. (*Id.* ¶ 78.) "Plaintiff reported that he was doing well[,] and he denied any significant change in his symptoms since his last office visit.

5

Plaintiff denied any rectal bleeding, but said he sometimes had urgent stools." (*Id.* (emphasis omitted).) Dr. Kilgore "ordered additional labs" and answered all Plaintiff's questions. (*Id.* ¶ 79.) "Dr. Kilgore recommended Plaintiff to start on Stelara or an alternative biologic as per insurance availability." (*Id.* ¶ 80.) As before, Dr. Kilgore did not find any emergency or refer Plaintiff to the hospital for treatment. (*Id.* ¶ 81.) Plaintiff's "labs were within normal limits" on September 7. (*Id.* ¶ 82.)

Plaintiff also saw Dr. Noel Sanchez, a colorectal surgeon on September 7. (*Id.* ¶ 83). The medical student with Dr. Sanchez noted "r[ight] gluteal cleft fistulous lesions at various stages of healing, no current drainage or abscess formation, superficial overlying skintag of rectum, good rectal tone." (Doc. 91-12 at 34). Plaintiff was told the findings of the rectal examination. (Doc. 91 ¶ 85.) Dr. Sanchez also did not find an emergency or send Plaintiff to the hospital. (*Id.* ¶ 86.) Plaintiff was in medical observation at the detention center on September 11, 12, and 13, 17, 18, 21, 23, and 24, and he had no complaints. (*Id.* ¶ 87.) Plaintiff was given hemorrhoid cream on September 14. (*Id.* ¶ 88.) That day, Dr. Kilgore faxed the jail recommending administering Stelera to Plaintiff. (*Id.* ¶ 89.) Haubenstein submitted a Stelera request to a health center called Heritage Health. (*Id.*) Haubenstein followed up with the U.S. Marshals Service about Plaintiff's Stelera prescription on September 20. (*Id.* ¶ 90.) The U.S. Marshals Service reached out to Dr. Kilgore on September 24 about less potent medications as alternatives and expressed a concern about costs, noting that they were limited to Medicare rates. (*Id.* ¶ 91.) Dr. Kilgore responded by saying that a Humira pen could be used as an alternative. (*Id.* ¶ 92.)

Defendants requested the Humira pen from the U.S. Marshals Service. (*Id.* ¶ 93.) Haubenstein faxed Dr. Kilgore's office on October 10 seeking blood test results as soon as possible because those test results were necessary to get Humira approved for Plaintiff. (*Id.* ¶ 95.) Heritage

Health approved Humira for Plaintiff on October 14. (*Id.* ¶ 96.) The Humira arrived on October 15, and Haubenstein gave Plaintiff Humira injections that same day. (*Id.* ¶ 97.) Plaintiff tolerated the injections well and received Humira every two weeks thereafter. (*Id.*) The injections helped once Plaintiff got used to them. (*Id.*)

Plaintiff continued to receive care from Defendants and had multiple follow-ups with Dr. Kilgore thereafter. (*Id.* ¶¶ 101-26.)[8] This culminated in Plaintiff going to Dr. Sanchez for an examination under anesthesia and a seton placement on December 22. (*Id.* ¶ 127.) But Dr. Sanchez did not identify a fistula tract from the anal canal. (Doc. 91-12 at 16.) There were no draining tracts, and Dr. Sanchez could not identify an active fistula tract heading towards the anal canal. (*Id.*) Thus, Dr. Sanchez recommended that Plaintiff continue his biologic treatments. (*Id.*) Dr. Sanchez believed the biologic treatments had been effective, and that Plaintiff's fistula tracts had essentially dried out. (*Id.*) Setons were not placed. (*Id.*; *see also* Doc. 91 ¶ 131.) Plaintiff continued receiving treatment from Defendants thereafter, and he never received a seton placement as of his deposition in November 2022. (Doc. 91 ¶¶ 132-38.)

Plaintiff started an internal grievance process regarding his fistula treatment on October 6, 2021. (Doc. 95-3 at 86.) Captain Stewart provided the final response to Plaintiff's grievance on December 15 by informing Plaintiff that he had been approved for the surgery he wanted in the "very near future," but Stewart could not provide the exact surgery date for security reasons. (*Id.* at 102; *see also* Doc. 91 ¶ 190.) Plaintiff filed this lawsuit on January 10, 2022. (Doc. 1.)

---

[8] Plaintiff once again attempts to dispute statement of facts 101, 112, and 118 based on his only refusing medication that made him sick based on instructions from Defendants. (Doc. 95 at 6.) Again, Plaintiff fails to contravene that he refused prescribed medications, and there is no evidence presented showing Defendants were aware Plaintiff's medications made Plaintiff feel ill.

7

**II.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006), *abrogation on other grounds recognized by Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012).  The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies.  D. Kan. R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.*  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) ("[T]he district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record." (internal quotation and citation omitted)).

In his response, Plaintiff failed to respond to most of Defendants' statement of facts.  In accordance with this court's local rule regarding motions for summary judgment, D. Kan. Rule 56.1, Defendants provided Plaintiff with the notice regarding the rules applicable to motions for

8

summary judgment. (Doc. 89.) This notice informed Plaintiff that Defendants' facts would be admitted if he failed to properly controvert those facts. As a result, all facts that have not been properly controverted by Plaintiff are admitted.

### III. Analysis

#### A. Exhaustion

Plaintiff claims Defendants were deliberately indifferent to his need for medical treatment of his fistulas. (Doc. 6 at 5-8.) Defendants argue that Plaintiff failed to exhaust his administrative remedies for any claim regarding Miller because he did not name her in his exhausted grievance and that Plaintiff failed to exhaust the following aspects of his claim against Haubenstein because he did not include them in his exhausted grievance:

> [T]hat it took 90 days or until sometime in March 2021 before [P]laintiff received materials to treat the wound; that Defendants did not "package" his wound or do anything to care for his condition; that he was not put on a list for a daily shower and was told to use his sink for cleaning the wound on days when he could not shower; that the nurses did not permit him to have extra boxer shorts; that Defendant Haubenstein refused to see Plaintiff on October 29, 2021; and that Haubenstein refused to see and care for [P]laintiff.

(Doc. 90 at 15.) Plaintiff argues in response that he exhausted all available remedies under the inmate handbook. (Doc. 95-1 at 4.)

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). However, a "prisoner's failure to exhaust administrative remedies is an affirmative defense." *Wright v. Gess*, No. 22-1179, 2023 WL 4542154, at *2 (10th Cir. July 14,

2023) (citing *Jones v. Bock*, 549 U.S. 199, 211-12 (2007)).  A defendant moving for summary judgment on an affirmative defense must demonstrate that no disputed material fact exists regarding the defense.  *Id.*  And "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219.  In determining exhaustion, a court considers whether the grievance proceedings supplied prison officials with enough information to address the substance of the eventual court action.  *Dawson v. Archambeau*, No. 21-1307, 2022 WL 16748511, at *4 (10th Cir. Nov. 7, 2022), *cert. denied*, 143 S. Ct. 1071 (2023).

Here, Plaintiff's exhausted grievance included several generalized allegations about his fistula treatment by "medical staff" such that his lack of naming Miller does not *per se* mean he cannot pursue a deliberate indifference claim against her.  (Doc. 91-16 at 19-20.)  Regarding Plaintiff's allegations regarding delay in care, wound packaging, shower access, and additional boxers, it appears Defendants were on notice for a claim regarding these issues due to allegations such as "I HAVE RECTUM BLEEDING AND PAIN *I BASICALLY HAVE TO CARE FOR MYSELF* UNTILL I GET SENT OUT TO THE OUSIDE DOCTORS NUMEROUS TIMES I HAVE BEEN IN THIS FACILITY COMPLAINING ABOUT PAIN AND BLEEDING *AND WASNT SEEN ANOTHER TIME*." (*Id.* at 16 (emphasis added).)[9]  Plaintiff's allegations were not the picture of clarity, but they may have been just enough to put officials on notice as to the ultimate subject-matter in this lawsuit.  Ultimately, the court need not rest its decision on exhaustion because Defendants are entitled to summary judgment on the merits.

---

[9] It is a bit unclear what constitutes Plaintiff's final grievance because there are two step-four grievances in the record: one was filed by Plaintiff on December 2, 2021, and the other on December 3.  (Doc. 91-16 at 16-17, 19-20.)  It appears that the earlier step-four grievance may not have complied with the prison's procedures, thus requiring the second grievance.  However, Defendants never make that clear.  Given Plaintiff's pro se status, Defendants' burden to show an affirmative defense at the summary judgment stage, and the duty to construe all facts in Plaintiff's favor, the court considers both of Plaintiff's step-four grievances in determining exhaustion.

B.     **Deliberate Indifference**

The Eighth Amendment protects against deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Plaintiff alleges that Defendants violated his Eighth Amendment rights by denying him proper wound care and medication prescribed by a specialist. (Doc. 6 at 2.) Plaintiff further alleges that he had to wash out his own boxer shorts by hand, use a sink to keep his fistula clean, and was not provided wound care for ninety days. (*Id.* at 4.) And finally, Plaintiff alleges Haubenstein refused to see him on October 29, 2021, and on November 8, 2021. (*Id.* at 6.)[10] Defendants make a two-fold argument for summary judgment: (1) that Defendants' actions were reasonable, and (2) that Plaintiff was not exposed to an unreasonable risk of harm. (Doc. 90 at 11.) Defendants point out that "Plaintiff's claims reflect mere disagreement with what type of treatment he received," which is insufficient to show deliberate indifference. (*Id.* at 12-13.)

Deliberate indifference to a serious medical need requires proof that, objectively, a plaintiff was suffering from a serious medical need and that, subjectively, a defendant was aware of the need for medical care but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). "To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sawyers v. Norton,* 962 F.3d 1270, 1283 (10th Cir. 2020) (citation omitted). A plaintiff may satisfy the objective component based on a delay in medical care if the delay resulted in substantial harm. *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1155 (10th Cir. 2022). "The substantial harm requirement may be satisfied by lifelong handicap,

---

[10]  The scan of Plaintiff's complaint cuts off part of the second date. It appears this allegation deals with an interaction Plaintiff had with Haubenstein on November 8, 2021.

permanent loss, or considerable pain." *Id.* Finally, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

Here, Plaintiff argues he suffered pain and infection from inadequate medical care. (Doc. 6 at 2, 4.) Plaintiff points to no objective evidence of lack of treatment or delay in treatment for an infection. Thus, the court focuses on his claims of pain. The undisputed facts show that Plaintiff received regular care for his fistula disease and that Plaintiff's condition has improved over the course of his time at Butler County Detention Center. The undisputed facts show that, rather than *Defendants* interfering with any prescribed medication, the *U.S. Marshals* sought an alternative prescription which was *still effective* in treating Plaintiff's condition. (Doc. 91 ¶¶ 89-92, 131). It is further uncontroverted that Plaintiff was seen by Haubenstein frequently, by Miller six times, and by outside medical professionals at least six times over the course of 2021. (*Id.* ¶¶ 141, 145.) It is also undisputed that Defendants "have no say as to when an inmate is sent to an outside appointment or when the outside medical clinic determines that the inmate should be seen." (*Id.* ¶ 119.) Regardless, there is no ninety-day gap in treatment based on the undisputed facts. There is no evidence that Defendants subjectively disregarded Plaintiff's fistulas and Crohn's disease.

Nor is there any evidence that having Plaintiff use a sink to keep his wound and boxers clean was subjective deliberate indifference to his medical needs. It is undisputed that Plaintiff has no medical background. (*Id.* ¶ 9.) And he provides no evidence that contact with his own blood was harmful or dangerous. Moreover, Plaintiff's own affidavit indicates that he was only given access to the showers every other day due to COVID-19 concerns, which undermines his claim that his lack of daily shower access was due to deliberate indifference by Defendants. (Doc. 95-2 at 1-2.).

Finally, even assuming Plaintiff is correct and Haubenstein "refused" to see him on October 29 or 30 and on November 8,[11] it is undisputed that Haubenstein saw Plaintiff on October 31 and administered Humira to him, which has been successful in managing Plaintiff's condition. (Doc. 91 ¶¶ 101, 131.) It is also undisputed that Plaintiff had "labs" done on November 8 and that Plaintiff received a Humira injection on November 12 and had no complaints at that time. (*Id.* ¶¶ 105-06.) Thus, it appears that the only inference a reasonable jury could draw is that any displeasure Plaintiff had about the timing of his appointments with Haubenstein was due to a mere disagreement with his treatment plan rather than any subjective disregard of Plaintiff on Haubenstein's part. *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) ("So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met.").

Furthermore, even if a jury could conclude that the evidence supported a finding of subjective deliberate indifference on Defendants' part, Plaintiff still fails to show substantial harm under the objective prong. There is no evidence that any short delay in any medical attention Plaintiff received resulted in considerable pain.[12] There is also no evidence that using a sink for cleaning the fistulas rather than extra showers or boxers caused Plaintiff any drastic pain. The undisputed facts show Defendants have effectively managed Plaintiff's Crohn's disease and fall far short of the deliberate indifference standard. Therefore, Plaintiff fails to show that Defendants were aware of and disregarded Plaintiff's medical needs. Plaintiff further fails to show substantial

---

[11] Plaintiff changes course in his opposition to summary judgment and supplies an affidavit claiming it was October 30 rather than October 29 when Haubenstein refused to see him. (Doc. 95-2 at 2-3.)

[12] Of course, a brief delay in medical care can violate the Eighth Amendment under some factual circumstances. *See, e.g.*, *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (noting a several hour delay in taking inmate with chest pains to hospital violated Eighth Amendment in analyzing the subjective prong of deliberate indifference). But there is no evidence of serious harm akin to a cardiac arrest in this case.

harm based on any actions by Defendants. Plaintiff has failed to show either required prong of deliberate indifference. Defendants are entitled to summary judgment.

## IV.     Conclusion

Defendants' motion for summary judgment (Doc. 88) is GRANTED.

IT IS SO ORDERED.  Dated this 21st day of September 2023.

                                                   _s/ John W. Broomes_____
                                                   JOHN W. BROOMES
                                                   UNITED STATES DISTRICT JUDGE